## The People *vs.* Charles Hettick.    *Grand Larceny.*

Charles Hettick was indited for grand larceny, at the last September term. The cause was removed, on behalf of the defendant, by *ceritorari*, to the Supreme Court. On deliberation, however, the Supreme Court annulled the order of Mr. Justice Platt, and remanded the cause to the Sessions, where it came to trial this day.

*Maxwell, District Attorney. D. B. Ogden appeared as counsel for the People. Wm. M. Price and Thomas Phœnix for the Prisoner.*

WHEN the jury were about to be called,

NEW-YORK,
June, 1823.

The People
*vs.*
Chas.Hettick.

Jurors permitted to be asked whether they had formed an opinion of the merits of the case.

Mr. *Price*, for the defendant, rose and stated that, inasmuch as at the time of the prisoner's arrest some publications were made, tending too much, as he feared, to prejudice the public mind against his client, he wished the jurors might be asked, as they came to the box, whether they had formed any opinion upon the merits of the question they were about to try. This question was accordingly put, and uniformly answered in the negative. The jury being sworn, Mr. *Maxwell, District Attorney,* opened the case.

Counsel cannot state facts in his opening that will not be allowed in evidence to the jury.

*Maxwell* was proceeding to give in detail the facts of the case. *Price* objected, and insisted that he was stating facts, in the opening, that could not be allowed to be given in evidence to the jury. The Court ruled, the counsel for the people could open such facts only as were legal evidence; and that he could not be allowed to state those which he could not offer evidence to before the jury.

The facts of the case, as detailed by the witnesses, are as follows : The prosecutor, Dr. Carmichael, a gentleman, of respectability, who resided in Pinckneyville, in the Mississippi, came to the Northern States for the purpose of spending the summer. He drew out of the Branch Bank at New Orleans, to the amount of $5,000, in June, 1822, and immediately proceeded to the north, the prisoner then being in New Orleans.

The Doctor came by land, and put up, for a short time, at the Mansion House in Philadelphia. It was proved by the testimony of Capt. Barnard that the prisoner left New Orleans in the Steam Ship, in June, 1822, about the same time the Doctor commenced his journey, and some distance below the city came on board the ship, from a boat

that lay in the river, and came around with him to New York; alleging, during the passage that he had lost his money, and was unable to pay the Captain. He left the boat and proceeded to Philadelphia, and put up at the same house with Dr. Carmichael.

The Dr. came on to New York and proceeded to the Springs at Saratoga. He staid there for a few days, and then returned to New York. He saw the prisoner at the Springs for the first time. The prisoner remained there only one day, and returned in the steamboat, Fire Fly, with the Doctor.

Dr. Carmichael had stowed his trunk away on the deck of the steamboat, among a large quantity of baggage.— About dusk the trunk was observed about half way drawn out; no particular notice was taken of it at this time, but during the evening the Doctor, on examining whether his trunk was safe, could not find it, and after the most diligent inquiry on that evening and the next day, he was equally unsuccessful.

On the arrival of the steamboat at New York, the search for the trunk was renewed, and all the passengers' trunk examined without success. Dr. Carmichael returned in the next boat, for the purpose of ascertaining whether it had been left at the stopping places up the river, but came back satisfied that it had not.

He returned to New York and put up at the Washington Hall. Here again he saw Hettick, who inquired of him about the loss of his trunk, and offered him linen, services, and money—took wine, and went to the theatre with him; and even proceeded so far as to accompany the

NEW-YORK,   Doctor to a  printer,  and copy for him an  advertisement
June, 1823.  stating the robbery, and offering a reward.

The People
    vs.        It was proved that on the arrival of the  prisoner in the
Chas.Hettick.  steam ship he  was  destitute of money, and left the ship
without  paying his passage ;  went to  Philadelphia, and
appeared to have plenty of  money ; got one fifty dollar
note of  the Bank of  the  United States,  payable  at  the
branch in New  Orleans, changed, and  appeared to have
other money ;  and after  his return to New York, and be-
fore he went to the Springs, could not pay a score at a bil-
liard table he frequented.

Mr. George  B. Rapelaye, a clerk  in  the  police office,
and who boarded at the same house with the prisoner and
Dr. Carmichael, had his suspicion excited, in consequence
of the levity and forwardness of the prisoner, that he was
the person who robbed Dr. Carmichael of his money, and
communicated his suspicion to  him, and finally arrested
the prisoner as he was sitting at the dinner table with Dr.
Carmichael.

He was brought to the police office, and upwards of four
hundred dollars, and some gold, were  found upon him.—
He denied being in possession of any more money, but on
examining his trunks, two five hundred dollar notes of the
local banks in Louisiana, were found rolled  up in a dirty
stocking, besides other  money  identified and claimed by
Dr. Carmichael.

It was proved by Mr. Rapelaye, that  before  the notes
were shown to the Doctor, he described them as being fold-
ed in his pocket book, in a  particular manner, and also as
being marked by a pin, and which, on inspection, appear-
ed as described.

*Maxwell* was proceeding to call Mr. Little, a broker, to show that Dr. Carmichael called upon him, after the robbery and before the money was found, and had described the notes in the particular manner he had folded them, and other marks.

*Price* contended that such evidence could not be admitted. It would be very easy for the prosecutor to make evidence for himself, if his declarations could be received, to convict the prisoner. The conversation of the prosecutor and third persons, could not be admitted to go to the jury against him.

*Odgen* replied, that by the questions put by the counsel for the prisoner, it was evidently their intention to contradict the testimony of Dr. Carmichael. It was, therefore, competent for them to show that he gave the same description of the notes, and their marks, before they were found upon the prisoner, as he had given now before the jury.

The Court decided that Dr. Carmichael's character had not been impeached, and therefore his testimony had not been called in question ; and that it was against the obvious rules of law to confirm a witnesses character or testimony before it was impeached. The declaration of counsel was no impeachment of a party's character. The conversation between Dr. Carmichael and Mr. Little cannot be admitted to go to the jury.

*The declaration of counsel is no impeachment of a witness's testimony or character, nor can the conversation between the witness and a third person be admitted until it is impeached.*

Mr. Hedden, a police magistrate, was called, and testified that Dr. Carmichael never so identified the money as to satisfy the witness that the money found on the prisoner was the same money lost by the Doctor. He certainly

NEW-YORK, did not so explain the bills to the witness, as to satisfy him
June, 1823. that he could, by marks, identify any part of the property.
He made no mention of folds, or pin holes, in the notes, &c.

The People
vs.
Chas. Hettick.

Mr. Little was again called, and it was contended on the part of the people, as Mr. Hedden had been examined to invalidate the testimony of Dr. Carmichael, and had testified that in his opinion he had not identified the money, it was now competent for them to show that, after he lost the money and before it was found, he had described it to Mr. Little, agreeing with his description of it in his evidence before the jury.

*Price* again objected, but the Court decided that it was now proper evidence to go to the jury.

It was then proved by Mr. Little, that Dr. Carmichael had called upon him and described the notes as being folded in a particular manner, and that there were the marks of a pin hole through two of them, exactly corresponding to those now shown to the witness.

*Price* opened the case upon the part of the prisoner, and called witness to prove that before the robbery the prisoner was seen in possession of fifty dollar notes of the same bank, denomination, and amount as those charged in the indictment.

The case was summed up to the jury by *Phœnix* and *Price* for the prisoner, and *Maxwell* and *D. B. Odgen* for the people.

The Court, after recapitulating the facts to the jury, left it to them to say whether the defendant was guilty or not guilty.

·The jury returned a verdict of guilty against him.